**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2003-DP-00457-SCT**

*JEFFREY KEITH HAVARD*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/19/2002 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ANDRE De GRUY |
| | STACY P. FERRARO |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MELANIE KATHRYN DOTSON |
| DISTRICT ATTORNEY: | RONNIE LEE HARPER |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | AFFIRMED - 02/09/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1. After a jury found Jeffrey Havard guilty of capital murder (murder during the commission of sexual battery) of six-month old Chloe Britt, the same jury found Havard should suffer the penalty of death. Consistent with the jury verdict, the trial judge imposed the death sentence upon Havard, and it is from this final judgment that Havard appeals to us. Finding no reversible error in the guilt/innocence phase, or the sentencing phase, we affirm the judgment of conviction and sentence entered by the Adams County Circuit Court.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.     Jeffrey Havard was living in Adams County with Rebecca Britt, the mother of six-month old Chloe Britt.[1]  Havard was not Chloe's father.  Havard and Britt had been dating for a few months when Britt and Chloe moved in with Havard in his trailer located on property owned by Havard's grandfather.  Around 8:00 p.m. on February 21, 2002, Havard gave Britt some money and asked her to go to the grocery store to get supper.  Britt returned to find Chloe bathed and asleep.  Havard told Britt he had given Chloe her bath and put her to bed.  Havard had also stripped the sheets off the bed and told Britt he was washing them.  Before that night, Havard had never bathed Chloe or changed her diaper.  After Britt checked on Chloe, Havard insisted that Britt go back out to the video store to rent some movies.  When Britt returned, Havard was in the bathroom, and Chloe was blue and no longer breathing.  Britt performed CPR on Chloe in an attempt to resuscitate her.  Britt and Havard drove Chloe to Natchez Community Hospital, where Britt's mother worked.  The pathologist who prepared Chloe's autopsy report would later testify that some of her injuries were consistent with penetration of the rectum with an object.  Other injuries of the child included abrasions and bruises inside her mouth and internal bleeding inside her skull consistent with shaken baby syndrome.  Both the hospital staff and the Sheriff observed anal injuries on Chloe as well, but no one at Chloe's day care had ever noticed bruises or marks on Chloe.  No anal injuries or anything unusual about the child's

---

[1]There is some confusion in the record regarding Chloe's age. Chloe was actually six months old on February 21, 2002, the date of the incident leading to the child's death; however, the mother mistakenly testified that Chloe was born on August 29, 2000.  It is apparent that Chloe's correct date of birth is August 29, 2001.

rectum was noticed by the day care staff earlier on the day of February 21st. Chloe was pronounced dead at the hospital later that night.

¶3. In the course of the investigation, Havard was charged with capital murder. In a videotaped statement two days after Chloe's death, Havard denied committing sexual battery on Chloe, but instead claimed he accidentally dropped her against the commode after bathing her, shook her in a panic, and then rubbed her down with lavender lotion before putting her to bed. The State presented DNA evidence which had been collected from the bed sheet. This evidence matched the DNA of both Havard and Chloe. A sexual assault kit testing for any of Havard's DNA in Chloe's rectum or vagina produced negative results. Havard offered no explanation for Chloe's injuries other than the possibility that he wiped her down too vigorously when preparing her for bed. Because Havard was indigent at trial, counsel was appointed to represent Havard, who also has court-appointed counsel for this appeal. Various events in the trial proceedings give rise to Havard's issues on appeal. In a pre-trial motion, defense counsel requested that any victim impact statement be excluded; and, the trial judge granted the motion as to the guilt/innocence phase of the trial. During the trial court's voir dire concerning any personal relationships jurors may have had with Havard, one juror stated she felt she could not be fair because her niece had been raped. The trial court later questioned the potential jurors to ascertain whether any one juror would either automatically vote for the death penalty, or would be unable to vote for the death penalty in the sentencing phase of the trial, regardless of the evidence presented at trial. One juror, who would later swear in a post-trial affidavit that he felt the death penalty was always appropriate in murder cases, was

3

selected as a juror for the trial of this case. Trial counsel's defense strategy was to defend against any allegations of the underlying felony of sexual battery, consistent with Havard's version of the events of that night. The jury returned a verdict of guilty; and, in a separate sentencing hearing, the same jury found that Havard should be sentenced to death. Havard raises fourteen issues on appeal, including questions of ineffective assistance of counsel, trial court error, prosecutorial misconduct, and a legally defective indictment. These issues arise from various phases of the trial, including the voir dire examination of the jury, the introduction of certain testimony and other evidence, the closing arguments, and the sentencing phase of the trial. Additionally, in death penalty cases here on direct appeal, this Court is required by statute to review other issues, regardless of whether the appellant has specifically raised those issues. These issues include the proportionality of the death sentence and other designated questions regarding the death sentence. Miss. Code Ann. § 99-19-105 (1972).

## DISCUSSION

¶4.     On appeal to this Court, convictions upon indictments for capital murder and sentences of death must be subjected to "heightened scrutiny." *Balfour v. State*, 598 So.2d 731, 739 (Miss. 1992) (citing *Smith v. State*, 499 So.2d 750, 756 (Miss. 1986); *West v. State*, 485 So.2d 681, 685 (Miss. 1985)). Under this standard of review, all doubts are to be resolved in favor of the accused because "what may be harmless error in a case with less at stake becomes reversible error when the penalty is death." *Id.* (quoting *Irving v. State*, 361 So.2d 1360, 1363 (Miss. 1978)). *See also Fisher v. State*, 481 So.2d 203, 211 (Miss. 1985).

4

## I. WHETHER TRIAL COUNSEL WERE INEFFECTIVE FOR FAILING TO ENSURE THAT A JUROR WAS EXCUSED FOR CAUSE AFTER EXHIBITING BIAS

¶5. Havard argues his representation was ineffective at several points during the trial, violating his right to effective counsel. Havard specifically asserts his trial counsel failed to ensure that juror number twenty-five, Dorothy Sylvester, was excused for cause because she was biased against him. During the court's voir dire, the trial judge asked whether any of the prospective jurors knew Havard or his family. In response, Sylvester stated, "I don't know him, but I had a niece to be raped – you know – I don't think I could be fair about it, too." The trial judge clarified that he would deal with those concerns later, and at that point in the questioning, he was merely asking if any member of the venire was acquainted with Havard or his family. Sylvester was eventually selected and served on the trial jury as juror number seven in the order of selection.

¶6. During the jury selection process, the trial judge granted all but one of the thirteen for-cause challenges exercised by defense counsel. Of the forty-five jurors stricken for cause in this case, defense counsel successfully challenged twelve jurors. Additionally, counsel for the State exercised ten of the allotted twelve peremptory challenges, plus one peremptory challenge on an alternate juror; and, defense counsel exercised seven of the allotted twelve peremptory challenges, but with no peremptory challenges being exercised on an alternate juror. Neither counsel for the State nor for the defense challenged Sylvester for cause or peremptorily. When the trial judge was conducting his voir dire of the jury venire, the emphasis was on fairness. The trial judge informed the jury that the purpose of voir dire

5

examination was to discover anything "that in all honesty would make it very difficult for you to be a totally fair and impartial juror." During his follow-up questions directed at specific jurors, the trial judge also repeatedly asked whether certain circumstances would make it difficult for the juror to be totally fair and impartial. The words "fair," "impartial," "fairly," and "honestly" appear multiple times in the transcript throughout the trial court's voir dire examination. Counsel for the State likewise emphasized fairness in his questioning, and defense counsel informed the members of the jury venire that he would not repeat a question already asked of the jury unless he felt compelled to do so.

¶7.     The right to effective assistance of counsel can be found in the Sixth Amendment of the United States Constitution. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Sixth Amendment, however, guarantees only the right to reasonably effective counsel or competent counsel, not perfect counsel or one who makes no mistakes at trial. *Wilcher v. State*, 863 So.2d 719, 734 (Miss. 2003); *Mohr v. State*, 584 So.2d 426, 430 (Miss. 1991); *Cabello v. State*, 524 So2d 313, 315 (Miss. 1988). *See also Strickland*, 466 U.S. at 691. Mississippi has recognized that a strong presumption of competence exists in favor of the attorney. *Mohr*, 584 So.2d at 430. The test is one of reasonableness; counsel must have provided "reasonably effective assistance." *Strickland*, 466 U.S. at 687. For a defendant to prevail on a claim of ineffectiveness, counsel's representation must have fallen "below an objective standard of reasonableness." *Id.* at 688. The United States Supreme Court in *Strickland* laid out the standard and the test that must be

6

met for a successful claim of ineffectiveness of counsel. "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

¶8.    A convicted defendant must meet a two-pronged test to prove his trial counsel was constitutionally ineffective. *Id.* at 687. "First, the defendant must show that counsel's performance was deficient . . . second, the defendant must show that the deficient performance prejudiced the defense." *Id.* The *Strickland* Court clarified that "[u]nless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* As to the first prong, the errors of counsel's performance must be so serious that they prevented counsel from functioning as the Sixth Amendment guarantees. *Id.* As to the second prong, the errors of counsel must have been so serious that they deprived the defendant of a fair trial, that being a trial with a reliable result. *Id.* This Court has also noted the importance of both showings having been met. *Stringer v. State*, 454 So.2d 468, 477 (Miss. 1984). If either prong is not met, the claim fails. *Neal v. State*, 525 So.2d 1279, 1281 (Miss. 1987). *See also Mohr*, 584 So.2d at 430.

¶9.    Though juror Sylvester initially commented that she did not think she could be fair because of her niece's experience, the voir dire examination did not end there, and the jurors were continually under oath to be truthful in their answers to all voir dire questions propounded

by the trial judge and the attorneys. After this comment by juror Sylvester, counsel for both the State and the defendant, as well as the trial judge, continued to ask the potential jurors if any of them felt that they could not be fair in deciding the fate of the defendant in this type of case. Defense counsel did not sit idly by. The record reveals several instances of juror challenges where defense counsel struck for cause certain jurors who felt they could not be fair. Defense counsel did ask the venire members if any of them had been a victim of a crime. Answers were not restricted to situations where venire members themselves were victims; two other jurors, numbers 47 and 60, both answered that a family member had been a victim of a crime. Sylvester did not respond to this question. Defense counsel also made clear that he was going to avoid repeating questions already asked by the trial judge or the prosecutor. The trial court explained to the jurors the presumption of innocence and the necessity of deciding the case based solely on the evidence presented. The trial judge asked if any potential juror would automatically vote for the death penalty. The judge also asked the converse question – if any potential juror would be unable to vote for the death penalty regardless of the evidence presented at trial. Finally, the trial judge asked the prosecutor, who followed the trial judge in the voir dire examination, not to cover the same subject matter already covered by the trial judge in his voir dire examination. Counsel for the State ensured through questioning that the jurors understood they were to notify the court and the attorneys if any existing problem would affect their ability to consider death as an appropriate sentence. The prosecutor also explored in detail the jury venire's understanding of the burden of proof, reasonable doubt, the presumption of innocence, and the fairness demanded of the jury. The State, through counsel,

8

also inquired if any juror thought he or she could not be fair or reasonable in deciding the issue of the defendant's guilt. From the record, we are simply unable to find defense counsel's decision not to repeat these same questions rises to the level of ineffective assistance of counsel. Additionally, defense counsel had the opportunity not only to hear these voir dire responses from the members of the venire, defense counsel also had the invaluable opportunity to observe the demeanor of these potential jurors, both when they were responding to questions, and when they were simply reacting to the events which unfolded in the courtroom during the voir dire examination.

¶10. The answers, or lack of answers, to the voir dire examination, regardless of who was asking the questions, all served the same purpose. Sylvester made no indication during the extensive questioning following her objectionable comments that in any way revealed she would be unable to be fair and impartial in deciding whether Havard was guilty or not guilty, and if found guilty, in deciding the appropriate sentence. Given the multiple opportunities Sylvester had to notify the court or the attorneys of any potential problems she may have had in sitting on the jury, we cannot find trial counsel's performance was so deficient that it prevented counsel from functioning as guaranteed by the Sixth Amendment. Any possible error on the part of counsel must have been so serious that it deprived the defendant of a fair trial with a reliable result. If any counsel error occurred at all during the voir dire examination of juror Sylvester, we cannot find that it rose to such a level so as to require us to judicially declare constitutional ineffectiveness on the part of Havard's trial counsel.

9

¶11. We find counsel's performance was not deficient and that Havard's conviction and subsequent death sentence were not the result of a breakdown in the adversary process which rendered the result of Havard's trial unreliable. Therefore, we find this issue to be without merit.

## II. WHETHER TRIAL COUNSEL WERE INEFFECTIVE BY FAILING TO ASK "REVERSE-*WITHERSPOON*" QUESTIONS RELATING TO THE JURORS' POTENTIAL STRONG FEELINGS ABOUT THE DEATH PENALTY

¶12. Havard's next assignment of error, also one of ineffective assistance of counsel, is that his trial attorneys were ineffective in failing to ask questions relating to the jurors' qualifications to serve on a jury to decide a death sentence. Havard specifically claims defense counsel impermissibly failed to ask "reverse-*Witherspoon*" questions – whether jurors would automatically vote for the death penalty. *Irving v. State*, 498 So.2d 305, 310 (Miss. 1986) (citing *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)). Havard, relying on an outside-the-record affidavit from juror number twenty-nine, Willie Thomas, asserts that Thomas believed the death penalty was the only appropriate sentence in a murder trial. Thomas was ultimately selected as juror number eight, in the order of selection, to serve as a member of the trial jury.

¶13. The State claims that M.R.A.P. 22(b) bars four issues on appeal, namely issues II, III, IV, and VII, because these issues arise from facts not fully apparent from the record.[2] The

---

[2]In addition to Issue II currently under discussion, Issue III also relates to the seating of juror Willie Thomas; Issue IV relates to a claim of ineffective assistance of counsel for failure to adequately develop a trial strategy; and, Issue VII relates to a claim of ineffective

10

State likewise claims that based on the current version of Rule 22, the proper path Havard should take with regard to these issues is to seek post-conviction relief in the event his case is affirmed on direct appeal. The State claims that in a subsequent post-conviction relief proceeding, extraneous evidence, such as affidavits outside the record, would be permissible. Miss. Code Ann. § 99-39-1, et seq. (Rev. 2000).[3] The current version of Rule 22 clearly states that only issues based on facts fully apparent from the record may be raised on direct appeal.

> **(b) Post-conviction issues raised on direct appeal.** Issues which may be raised in post-conviction proceedings may also be raised on direct appeal *if such issues are based on facts fully apparent from the record*.[4] Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings.

M.R.A.P. 22(b) (2005) (emphasis added). Havard responds to these claims by pointing out that this version has only existed since its 2005 amendment. The controlling version, Havard argues, was the rule in effect at the time of the trial when the first sentence of this rule did not contain the phrase "if such issues are based on facts fully apparent from the record." Havard is correct. The version controlling here is the former rule, as it was the rule in effect at the

---

assistance of counsel in failing to adequately develop mitigating evidence to be presented at the sentencing phase of the trial. These issues will be discussed, infra.

[3]Specifically, Miss. Code Ann. Section 99-39-17 allows the judge to direct the record expanded to include outside documents and affidavits and to consider those documents as part of the record.

[4]This italicized phrase was added to this Rule by way of an amendment effective February 10, 2005.

11

time of the trial.[5]  Rule 22(b), prior to the 2005 amendment, simply stated that, "[i]ssues which may be raised in post-conviction proceedings may also be raised on direct appeal." *Id.*  The rule simply provides that issues normally reserved for post-conviction relief may also be raised on direct appeal; thus, this issue is not barred as the State argues.  In certain cases, the rule requires those issues to be raised or they will be later waived.  The second sentence, which appears in both versions of the rule, is also helpful in determining this issue.  "Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings." *Id.*  The comment to the current Rule 22 also makes clear that failing to raise certain, though not all, issues on direct appeal in a case such as this will constitute a waiver, specifically when those issues are claims of ineffective assistance of counsel.

> Rule 22(b) allows the appellant to raise post-conviction issues on direct appeal where the issues are fully apparent from the record of the trial, and failure to raise such issues constitutes a waiver.  Under this provision, *issues such as claims of ineffective assistance of counsel* for failure to object to evidence offered by the state or to argument by the state *must be raised on direct appeal*.  Other post-conviction issues which cannot be raised at the time of appeal because they involve actions or inaction outside the record are not

---

[5]To be abundantly clear, Rule 22(b), as it existed at the time of Havard's trial, stated:

> Issues which may be raised in post-conviction proceedings may also be raised on direct appeal.  Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings.

12

waived since they cannot practically be raised without further development or investigation.

M.R.A.P. 22 (comment) (emphasis added). In this case, Havard was represented at trial by counsel other than the current attorneys representing him on appeal. To avoid waiving these issues on post-conviction proceedings, Havard would be required under the current rule to raise them on this direct appeal. Under the former rule, the standard was more flexible and not restricted to certain types of issues. In either case, these issues may properly be raised on direct appeal, but we still must make a determination as to whether certain issues should be addressed on direct appeal, or be left for another day for post-conviction relief proceedings.

¶14. Though we may consider these issues on direct appeal, the next question is whether it is appropriate to consider issues that would require us to go outside the record. Reflecting the thrust of the rule generally, this Court recently held that when appellate counsel is different from trial counsel, and when there is a perceived requirement under the rule to raise on direct appeal issues which are commonly reserved for post-conviction proceedings, our consideration of supplemental documents on direct appeal in death penalty cases is proper. *Branch v. State*, 882 So.2d 36, 49 (Miss. 2004).

¶15. In *Branch*, we continued on a course of wrestling with the procedural quagmire resulting from what we respectfully characterize as a less than clear decision by the United States Supreme Court in *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). After declaring the execution of the mentally retarded amounted to cruel and unusual

13

punishment in violation of the Eighth Amendment to the United States Constitution, the Court stated:

> To the extent there is serious disagreement about the execution of mentally retarded offenders, it is in determining which offenders are in fact retarded. In this case, for instance, the Commonwealth of Virginia disputes that Atkins suffers from mental retardation. Not all people who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders about whom there is a national consensus. As was our approach in *Ford v. Wainwright*, with regard to insanity, "we leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences." 477 U.S. 399, 405, 416-417, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986).

536 U. S. at 317. Thus, in *Russell v. State*, 849 So.2d 95, 145-49 (Miss. 2003), we began our arduous journey down the road of considering post-*Atkins* claims of mental retardation by death row inmates. *Russell* was followed by our decision in *Goodin v. State*, 856 So.2d 267, 274-82 (Miss. 2003). Our cases dealing with *Atkins* issues via post-conviction relief proceedings are by now legion. *See, e.g., Jordan v. State*, ___ So.2d ___, 2005 WL 1176102 (Miss. 2005); *Wells v. State*, 903 So.2d 739 (Miss. 2005); *Conner v. State*, 904 So.2d 105 (Miss. 2004); *Hughes v. State*, 892 So.2d 203 (Miss. 2004); *Wiley v. State*, 890 So.2d 892 (Miss. 2004); *Gray v. State*, 887 So.2d 158 (Miss. 2004).

¶16.    In *Branch*, a direct appeal of a capital murder conviction and imposition of the death penalty, we were confronted with a mental retardation claim supported by documents outside the trial record. Like Havard, Branch had appellate counsel who had not served as his trial counsel. On his direct appeal, Branch submitted an appendices to his original brief, which included, inter alia, various affidavits from a doctor, one of his trial attorneys, family

14

members, and teachers. The State objected to our consideration of these documents which were clearly outside the record. We stated:

> The State challenges Branch's appendices which were not part of trial record. According to the State, these documents are barred from consideration. ***Wansley v. State***, 798 So.2d 460, 464 (Miss. 2001). However, Branch is not represented by the same counsel. Initially, Branch was represented by Callestyne Crawford and Solomon Osborne. Prior to trial, Osborne was replaced by W.S. Stuckey. The Office of Capital Defense Counsel was appointed for this direct appeal. We note M.R.A.P. Rule 22(b):
>
>> Issues which may be raised in post-conviction proceedings may also be raised on direct appeal. Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute waiver barring consideration of the issues in post-conviction proceedings.
>
> If new counsel on direct appeal is required to assert collateral claims, there must be an opportunity to submit extraneous facts and discovery and evidentiary hearing to develop and prove the allegations. *See **Brown v. State***, 798 So.2d 481, 491 (Miss. 2001) (citing ***Smith v. State***, 477 So.2d 191, 195 (Miss. 1985) and ***Turner v. State***, 590 So.2d 871, 874 (Miss. 1991)); ***Jackson v. State***, 732 So.2d 187, 190 (Miss. 1999).
>
> We have stated that "there is conflicting authority on whether this Court should apply the procedural bar" in a post-conviction relief case raising ineffective assistance of counsel on direct appeal. ***Goodin v. State***, 856 So.2d 267, 279 (¶ 30) (Miss. 2003). Goodin was then permitted to proceed on the issue of ineffective assistance of counsel and was granted an evidentiary hearing to determine whether he was "mentally retarded within the meaning of ***Atkins***." *Although this case is a direct appeal, Branch is represented by counsel who did not represent him in the trial court. Branch must raise **Atkins** and ineffective assistance of counsel issues in this direct appeal or he will be barred from doing so in subsequent appeals. Therefore, we will permit Branch to proceed with these issues, and we will consider the additional documents supplied in Appendices to Original Brief of Appellant.*

882 So.2d at 49 (emphasis added).

15

¶17. However, we later emphasized the limiting nature of our language in **Branch** regarding consideration of appendices which were not part of the official record on appeal. In **Hodges v. State**, 912 So.2d 730, 750 (Miss. 2005), we stated:

> Hodges argues that according to **Branch v. State**, 882 So.2d 36, 49 (Miss. 2004), this Court is allowed to consider such extraneous evidence not in the record. However, this Court in **Branch** clearly set forth that such appendices which were not part of the trial record were to be considered only on the **Atkins** [**v. Virginia**, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002)] and ineffective assistance of counsel issues. Here, during oral argument, defense counsel conceded that he was not pursuing this issue as ineffective assistance of counsel, but rather was doing so under the theory of prosecutorial misconduct. Also, this Court has recently amended Rule 22 of the Mississippi Rules of Appellate Procedure. Even though this amendment does not apply to the case sub judice, this Court holds that the plea hearing, which is not in the record, is barred from consideration and **Branch** does not allow this Court to consider such extraneous evidence. To make it clear what this Court can consider on direct appeal in future cases, Rule 22 has been amended to state that "[i]ssues which may be raised in post-conviction proceedings may also be raised on direct appeal" *if such issues are based on facts fully apparent from the record*. M.R.A.P. 22 (emphasis added).

912 So.2d at 750.

¶18. We are not about to embark upon a journey of a carte blanche consideration of outside-the-record documents, such as a juror's affidavit, to decide issues on direct appeal. Our ruling in **Branch**, as clarified in **Hodges**, was limited to a consideration of Branch's **Atkins** issues as it related to perceived ineffective assistance of trial counsel. It would indeed be dangerous here for us to begin a precedent of considering on direct appeals post-trial affidavits by affiants who have not been subjected to cross-examination. The utilization of affidavits is better served in the post-conviction relief proceedings allowable by statute. Miss. Code Ann. § 99-39-1 et

16

seq. (Rev. 2000). Having raised this issue with different counsel on direct appeal, Havard has preserved his right to raise this issue, supported by affidavits, in future post-conviction relief proceedings.

¶19. Considering the "reverse-*Witherspoon*" issue, absent the juror affidavit, the exact assignment of error here is that defense counsel was ineffective by failing to ask "reverse-*Witherspoon*" questions, meaning defense counsel should have asked whether the jurors would automatically vote for the death penalty. *Irving*, 498 So.2d at 310. Under this rule, the United States Supreme Court held that a juror must be excused if his or her views on the death penalty would unfairly affect the outcome of the jury verdict. *Witherspoon*, 391 U.S. at 520. Trial counsel did not ask "reverse-*Witherspoon*" questions, but the trial court did. The trial judge asked if any potential juror would automatically vote for the death penalty. Conversely, the judge also asked if any potential juror would automatically vote against the death penalty. The trial court therefore conducted both a "*Witherspoon*" examination and a "reverse-*Witherspoon*" examination. Worth noting is that the trial judge did strike at least nine venire members for cause at the request of the State based on *Witherspoon* considerations. Neither the State nor defense counsel challenged Thomas for cause or peremptorily. The proper questions were asked by the court and counsel and were answered by the potential jurors. The trial judge questioned the jurors on their abilities or inabilities, both as a group and individually, to consider a death sentence. The trial judge also requested that the attorneys not be redundant in their voir dire examination, keeping in mind the voir dire the court had

17

conducted. Honoring this request, defense counsel, during the voir dire, stated to the venire, "I'm not going to ask you anything that the Judge or [counsel for the state] asked you unless we really need to." Again, we cannot find that trial counsel's silence during this phase of voir dire constituted reversible error, when considering the totality of the voir dire examination conducted by the trial judge and the attorneys. Succinctly stated, all necessary questions were propounded to the venire during the whole of voir dire. Defense counsel, having heard the questions and the responses from the venire, and having observed the jurors' demeanor throughout the voir dire, was then free to choose not to repeat the questions. We cannot fairly say defense counsel's performance was deficient and prejudiced the defense. Therefore, this issue fails under the *Strickland* test, and is thus without merit.

### III. WHETHER HAVARD WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BECAUSE OF THE SEATING OF A JUROR WHO SUPPORTS THE DEATH PENALTY IN ALL MURDER CASES AND THAT JUROR'S FAILURE TO ANSWER THE TRIAL COURT'S QUESTION ON THIS POINT

¶20. Havard also claims the seating of juror Thomas, as well as Thomas's failure to answer the trial court's "reverse-*Witherspoon*" questions, effectively deprived Havard of his right to a fair trial under the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and their counterparts in the Mississippi constitution. The State counters with its analysis of M.R.A.P. 22, stating that because the record is devoid of any facts to substantiate Havard's claim, this Court cannot consider a post-conviction issue on direct appeal. This issue indeed does not raise claims of ineffective assistance of trial counsel.

18

Although the former Rule 22 required an appellant with different counsel on direct appeal to raise certain issues on pain of waiver in subsequent PCR proceedings, Rule 22 does not require that *all* issues be heard on direct appeal. Havard has now raised these issues and cannot later be found to have waived them. Havard's avenue for seeking future relief has not been thwarted – he has preserved those issues for post-conviction proceedings. While the current Rule 22 was not in place when Havard's case was tried, the current Rule 22, its comments, and **Branch** and **Hodges** give guidance as to what purpose the rule should serve. Concerning this issue, we find that it cannot practically be raised without further development or investigation, which would be proper during future post-conviction relief proceedings. This issue is without merit on direct appeal as post-conviction proceedings are better tailored for the Court to consider it.

### IV. WHETHER HAVARD WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DUE TO COUNSEL'S FAILURE TO ADEQUATELY SUPPORT THE DEFENSE STRATEGY

¶21. Havard again claims ineffective assistance of counsel in that his attorneys at trial developed a trial strategy and then did not investigate, secure expert assistance, offer any evidence in support of the theory, or request a jury instruction in support of the theory. Because trial counsel's theory was to contest the underlying felony of sexual battery, Havard argues that trial counsel should have presented rebuttal evidence and relies on a post-trial affidavit of Dr. James Lauridson to offer the possibility of disproving any sexual battery through DNA testing. Havard also contends that trial counsel was ineffective in failing to

19

secure a pathologist to investigate and present a theory of defense. Trial counsel did request funds for an investigator, but the trial court denied that request.

¶22. Again, the State counters with its analysis of Rule 22 as to Dr. Lauridson's outside-the-record affidavit, and, consistent with our discussion of Issue II, supra, we consider this issue, absent Dr. Lauridson's affidavit.[6]

### 1. Failure to obtain DNA evidence

¶23. Havard claims his trial counsel was ineffective for failing to secure a DNA expert to disprove the allegations of sexual battery, the underlying felony in this case. Havard's counsel did however establish on cross-examination of crime lab biologist Amy Winter that no testing was done on Havard or Chloe for DNA samples. As the State correctly points out in its brief to this Court, showing the absence of DNA evidence on either Chloe or Havard would not absolve Havard of guilt of sexual battery. Sexual battery is defined as sexual penetration of a class of victims. Miss. Code Ann. § 97-3-95. The sexual penetration, as defined by statute, may be penetration with "any object," not necessarily a body part. Miss. Code Ann. § 97-3-97. Indeed, on cross examination, defense counsel produced testimony that no thorough search

---

[6]Because we have determined we will not consider Dr. Lauridson's outside-the-record affidavit, we deem it unnecessary here to address the authority submitted by Havard's appellate counsel in his Rule 28(j) letter. *Gersten v. Senkowski*, 426 F.3d 588 (2nd Cir. 2005). *See* M. R. A. P. 28(j). *Gersten* involved an appeal to the Second Circuit Court of Appeals from a federal district court's grant of a petition for a writ of habeas corpus. Inasmuch as the incarcerated defendant had been tried and convicted in state court, and his conviction and sentence affirmed on direct appeal, the federal district court trial (and thus ensuing appeal to the circuit court of appeals) quite appropriately involved extensive affidavit testimony from experts to discredit the prosecution's theory of sexual abuse of the minor victim. Thus, for today's discussion, *Gersten* is inapplicable.

20

was conducted for any blunt object which could have been used in the commission of the underlying felony.

¶24. In *Branch*, we stated, "an indigent defendant has a right to receive state funds for a DNA expert where the state presents DNA evidence." 882 So.2d at 62 (citing *Richardson v. State*, 767 So.2d 195, 199 (Miss. 2000)). The State presented DNA evidence which had been collected from the bed sheet and which matched the DNA of both Havard and Chloe. Defense counsel did adduce testimony on cross-examination that a sexual assault kit from Chloe testing for any of Havard's DNA in her rectum or vagina came back negative. Consistent with long-standing principles of fairness in criminal trials, Havard carried no burden to prove any fact, but held a presumption of innocence which was explained to the jury. The State carried the burden of proving Havard's guilt beyond a reasonable doubt. It is apparent from the record that defense counsel's strategy was to attack the weakness of the State's case, and for reasons discussed, infra, such a defense strategy is not per se ineffective assistance of counsel under *Strickland*.

### 2. Failure to secure a pathologist

¶25. Havard claims his trial counsel was ineffective for failing to secure a pathologist to investigate the case and develop a defense strategy. Havard's counsel did request an independent evaluation of the autopsy report based on counsel's lack of medical training and need to develop a defense. The trial court denied the motion because counsel showed no basis for need when Dr. Steven Hayne, the pathologist who prepared the report, was available. Havard now asserts that the failure of his trial counsel to present the trial court with any basis

21

for the request constitutes ineffective assistance. Havard relies on a case from this Court to support his proposition that a denial of a defendant's request for expert assistance can strip an accused of a fair trial. *Harrison v. State*, 635 So.2d 894 (Miss. 1994). In *Harrison*, this Court made clear that a right to defense funds to obtain such an expert are conditioned upon a showing of need to prepare a defense, and will depend on the facts and circumstances of each case. *Id.* at 901. As Havard points out through his reliance on *Harrison*, this Court has stated in *Hansen v. State*, 592 So.2d 114, 125 (Miss. 1991) that a showing of substantial need is required for such a request. The defendant must bring forth "concrete reasons" to the trial judge that assistance would be beneficial. *Harrison*, 635 So.2d at 901. Because trial counsel failed to bring forth any concrete reasons or show any substantial need, Havard alleges ineffective assistance of counsel.

¶26. We stated in *Harrison* that because no single test exists for determining when an expert's services are necessary, and because the determination is made on a case-by-case basis, the trial judge has the sound discretion to decide when a need exists. *Id.* In *Johnson v. State*, 529 So.2d 577, 590 (Miss. 1988), we stated that we will grant relief to a defendant for denial of expert assistance only where the defendant demonstrates that the trial court abused its discretion so egregiously that it denied him due process and rendered his trial fundamentally unfair.

¶27. As noted, Havard offers the affidavit of Dr. James Lauridson and an accompanying medical journal article to show this substantial need which his trial counsel failed to show. Dr.

22

Lauridson reviewed the autopsy report before submitting his affidavit. Again, we deem it inappropriate to consider this outside-the-record documentation. Thus, the question before this Court is whether trial counsel was ineffective for failure to make a more diligent effort to request his own pathologist by obtaining this information and showing need. We cannot find that defense counsel's efforts rose to such a level so as to offend *Strickland*. Trial counsel made the request based on a need for assistance in interpreting the autopsy report. Now on appeal, Havard's counsel has an independent evaluation of that autopsy report. The trial court exercised its discretion in refusing defense counsel's request for an independent evaluation, and we find no abuse of discretion in the trial court's actions so as to deny Havard a fundamentally fair trial.

### 3.    Failure to include a lesser offense instruction

¶28.    Havard claims his trial counsel was ineffective for not including a lesser offense instruction on murder or manslaughter. When claiming ineffective assistance of trial counsel because of jury instructions, "[i]t is the duty of the appellant to demonstrate both error in failing to receive the instruction and the prejudice to the defense." *Burnside v. State*, 882 So.2d 212, 216 (Miss. 2004).

¶29.    Havard relies on *Woodward v. State*, 635 So.2d 805 (Miss. 1993) to support his assertion that his trial counsel had an obligation to submit a jury instruction on non-capital (simple) murder when embracing a theory of defending against the underlying felony. This Court in *Woodward* found trial counsel to be ineffective, but not for failing to submit jury

instructions. *Id.* at 810. The accused in *Woodward* claimed ineffective assistance because defense counsel admitted that the defendant committed murder. *Id.* at 808. In *Woodward*, the defendant, who was on trial for capital murder, had admitted to shooting the victim but claimed it was not during the commission of the underlying felony of rape; therefore, counsel admitted at trial that the defendant was guilty of simple murder, a lesser crime than that of capital murder. *Id.* at 808.

¶30.    As in any case, jury instructions are critical in homicide cases. "In a homicide case, as in other criminal cases, the court should instruct the jury as to theories and grounds of defense, justification, or excuse supported by the evidence, and a failure to do so is error requiring reversal of a judgment of conviction." *Giles v. State*, 650 So.2d 846, 849 (Miss. 1995). "We have repeatedly held that lesser-included offense instructions should not be indiscriminately granted. Rather, they should be submitted to the jury only where there is an evidentiary basis in the record therefor." *Lee v. State*, 469 So.2d 1225, 1230 (Miss. 1985) (citations omitted). We also stated in *Giles* that even if the defenses are based on meager evidence and highly unlikely, "a defendant is entitled to have every legal defense he asserts to be submitted as a factual issue for determination by the jury under proper instruction of the court." *Giles*, 650 So.2d at 849. In *Giles*, defense counsel's only instruction submitted for his theory of defense was rejected by the trial court. Both *Giles* and *Woodward* emphasized that the jury instructions which reflect the defenses counsel employs must be submitted to the jury. In both *Giles* and *Woodward*, as in today's case, counsel's proposed jury instructions reflected the

24

defenses proffered. Havard's counsel presented a theory that Havard did not commit the underlying offense. Had the jury found this to be true, the jury's only choice would have been to acquit Havard.

¶31. With regard to all three of the above assignments of attorney error, we reiterate that counsel is given broad discretion to plan a trial strategy and to carry it out. In **Branch**, we said, "When evaluating the overall performance of counsel, counsel must make strategic discretionary decisions including whether or not to file certain motions, call certain witnesses, ask certain questions or make certain objections." **Branch**, 882 So.2d at 52 (citation omitted). Such decisions do not necessarily equate to ineffective assistance simply because counsel was not successful at trial. These trial decisions by counsel did not decidedly result in performance deficient under **Strickland**, but even if they did, the inquiry does not end there. "Once a deficient performance is shown, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" **Woodward**, 635 So.2d at 808 (quoting **Strickland**, 466 U.S. at 694).

¶32. To prevail on this claim, Havard must show under **Strickland** that counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." **Strickland**, 466 U.S. at 686. As to whether defense counsel's trial strategies and decisions were sound, Havard has no guarantee of flawless, or

25

successful, representation. "There is no constitutional right to errorless counsel." ***Branch***, 882 So.2d at 52. The record before us raises serious doubts as to whether the evidence supported the giving of a non-capital murder instruction or a manslaughter instruction. Admittedly, had defense counsel submitted such lesser offense instructions, this action would not have been contrary to the defense theory that there was insufficient evidence for the jury to find that Havard was guilty of the underlying felony of sexual battery. However, we view this decision by Havard's counsel not to be outside the realm of appropriate trial strategy. Because defense counsel did not submit the lesser offense instructions, had the jury found that the State failed to prove Havard guilty of the underlying felony of sexual battery, the jury would have been required to find Havard not guilty of capital murder, thus rendering him a free man. On the other hand, if any lesser offense instruction had been given to the jury, if the jury found that the State had failed to prove the underlying felony, the jury still could have found Havard guilty of the lesser offense, thus placing him in the state penitentiary for twenty years to life (depending on whether the jury had found Havard guilty of manslaughter or non-capital murder). Trial counsel's decision not to submit lesser offense instructions, while it turned out to be unsuccessful, was appropriate trial strategy, and thus beyond the realm of serious consideration on a claim of ineffective assistance of counsel. We thus cannot say that trial counsel's performance was deficient and that, but for counsel's deficient performance at trial with regard to this issue, a reasonable probability exists that the outcome would have been different. Thus, this issue fails under ***Strickland*** and is without merit.

26

## V. WHETHER HAVARD WAS DENIED HIS CONSTITUTIONAL RIGHT OF A FUNDAMENTALLY FAIR TRIAL BECAUSE OF PROSECUTORIAL MISCONDUCT AT CLOSING ARGUMENT

¶33. In closing argument, counsel for the State stated, "Now, I'm not making any accusations. I don't know if anything had ever happened with that child before, but that night he got carried away or something, and he hurt that child more than he intended to in this sexual battery." Havard claims this amounts to a suggestion that Havard had previously sexually assaulted Chloe and is prosecutorial misconduct.

¶34. Havard's counsel failed to object to these statements at trial. The applicable rule here is clear. "In order to preserve an issue for appeal, counsel must object. The failure to object acts as a waiver." *Carr v. State*, 873 So.2d 991, 1004 (Miss. 2004). Were Havard now alleging ineffective counsel for failure to object to this statement, our analysis here would be different. Because trial counsel failed to object at trial, this issue is waived. Procedural bar notwithstanding, we also address this issue on its merits.

¶35. It has long been the rule that defense counsel is entitled to broad latitude in closing argument and that the prosecuting attorney enjoys a similar freedom. *Neal v. State*, 451 So.2d 743, 762 (Miss. 1984). A prosecuting attorney's restriction to this latitude is that he or she may not argue some impermissible factor, such as the right of appeal or the fact that the defendant chose not to testify. *Id.* The statements about that night's alleged sexual battery were a permissible inference from the evidence the State had presented. This is acceptable under *Holland v. State*, 705 So.2d 307, 345 (Miss. 1997). Havard complains that the

27

statement infers that Havard may have been sexually inappropriate with Chloe in the past. However, we have long held that the prosecutors remarks are viewed in light of the entire trial. *Byrom v. State*, 863 So.2d 836, 872 (Miss. 2003). Looking at the record of the entire trial, we cannot find that the actions of the State constituted prosecutorial misconduct. Additionally, considering the totality of the record, even if we were to somehow find error in these statements, such error was unquestionably harmless. Lastly, the jury was properly instructed that comments from the attorneys were not to be regarded as evidence when the jury deliberated on its verdict. Accordingly, this issue is without merit.

## VI. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION OF VICTIM IMPACT TESTIMONY AT SENTENCING

¶36. The next issue is whether the trial court erred in allowing the victim impact testimony of Lillian Watson, Chloe's maternal grandmother who said, "Justice means [Chloe's] life was taken, and there is only one way that we can find justice for Maddie. A life for a life." Havard argues that because the testimony exceeded the bounds of allowable victim impact testimony, this amounts to trial court error in allowing this testimony.

¶37. Victim impact evidence is admissible at sentencing, though not at the culpability phase of trial. *Payne v. U.S.*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). We have allowed such evidence, recognizing that *Payne* only laid out what was constitutionally permitted, but not necessarily mandatory. *Hansen*, 592 So.2d at 146-47. "Victim impact evidence, if relevant, is admissible in the sentencing stage." *Wilcher v. State*, 697 So. 2d

28

1087, 1104 (Miss. 1997). As it is constitutionally permissible, this Court will allow such testimony, when relevant, in narrow circumstances. *Branch*, 882 So.2d at 67. "The evidence offered was proper and necessary to a development of the case and true characteristics of the victim and could not serve in any way to incite the jury." *Jenkins v. State*, 607 So. 2d 1171, 1183 (Miss. 1992). We have also allowed the opinions of the victim's family members as to the crimes and the defendant as permissible victim impact testimony. *See Wells v. State*, 698 So. 2d 497, 512 (Miss. 1997). In the testimony that Watson gave at sentencing, she also made clear that she was not seeking revenge and did not consider herself a vengeful person. Her entire testimony, taken in context, was not designed to incite the jury. The vast majority of her testimony went straight to the relationships between her family members, including Chloe, and the impact losing Chloe had on them, all part of permissible testimony under our case law. *See Edwards v. State*, 737 So. 2d 275, 290-91 (Miss. 1999). In *Edwards*, the State made closing remarks during sentencing that injustice would be hard to bear by the family and friends of the victim. Also, the State asked rhetorically whether it was justice for the defendant to remain sitting in jail reading, sleeping and watching television. *Id.* at 291. In *Wells* we allowed comments by the prosecution referring to testimony that opined the defendant in that case was not acting under duress and "knew exactly what he did, and when he did it" because of the manner in which the defendant killed the stabbing victim and cleaned up the crime scene. *Wells*, 698 So. 2d at 512. We did not find either of these to exceed the boundaries of permissible victim impact testimony.

29

¶38.    Even assuming, arguendo, that Watson's testimony may have constituted error, we borrow the reasoning from the Fifth Circuit, and find that requests by a family member for the jury to sentence the defendant to death can constitute harmless error when any prejudice that did result from the statements was mitigated by the trial court's jury instructions not to be swayed by passion, prejudice or sympathy.  *U.S. v. Bernard*, 299 F.3d 467, 480-81 (5th Cir. 2002).   Though the witnesses offering victim impact testimony in that case did not ask for the death penalty, the court in *Bernard* provides persuasive reasoning for this Court.   The *Bernard* court also looked to the context of the entire testimony and pointed out that victim impact testimony is a way to inform the jury about the specific harm caused by the crime, about the victim, and about the victim's family.  *Id.*   Impermissible testimony must be unduly prejudicial and render the trial fundamentally unfair.   *Id.*   The Supreme Court clearly recognized the unlikelihood that a brief statement would inflame a jury more than the facts of the case.  *Payne*, 501 U.S. at 832.   Even if we were to find that the statement was outside the boundaries of *Payne* and possibly constituted error, when all of the testimony is taken together in context, the result was not such as to prejudice the jury and render the trial fundamentally unfair.

¶39.    Again, Havard's counsel failed to object to this statement at trial.   Though Havard mentions in a footnote that failure to object to this statement constitutes ineffective counsel, the assignment of error here is focused on trial court error in allowing the testimony.   Because the trial judge cannot be faulted for not ruling on an objection which was not made, and because

30

this claim is also waived due to failure to object, this issue is without merit. Likewise, even considering this issue on its merits, we find it has no merit.

### VII. WHETHER TRIAL COUNSEL WERE INEFFECTIVE FOR NOT DEVELOPING AND PRESENTING COMPELLING EVIDENCE IN MITIGATION OF PUNISHMENT

¶40. At the sentencing phase of the trial, Havard's counsel called two witnesses, Cheryl Harrell, Havard's mother, and Ruby Havard, his grandmother, to offer testimony in mitigation. Havard now contends this was ineffective assistance of counsel in that only calling these two witnesses, and giving them virtually no preparation for trial, was an inadequate attempt at giving the jury evidence in order to consider a sentence less than death. Havard further contends the full background of his life would have shown the jury the hardships he suffered and his capacity to love. To support this issue, Havard submits several affidavits of friends, family, and a social worker who reviewed his life history.

¶41. Once more, the State responds to Havard's argument by referring to its Rule 22 and *Branch* analysis, stating that this Court cannot consider the issue on direct appeal because the record is absent of any facts to support the claim. Again, the former Rule 22, the version of the rule controlling here, allows us to consider these claims on direct appeal in this death penalty case, even if those claims are not based on facts fully apparent from the record, where counsel at trial was different from that on appeal. These affidavits reveal that Havard's life was full of abuse, neglect and hardships. He did not know his father, who is now serving time in a federal prison. He had been abused by his mother's boyfriend and his grandfather who took Havard in as a son. Havard also has a history of drug use. The affidavit of a social worker,

31

Adriane Kidd, reveals the negative effects such a life can have on a person. Havard asserts the jury should have been entitled to hear in more detail this part of his past. Havard also contends now that trial counsel should have drawn attention to his good qualities, such as his ability to show love and compassion, especially to small children. However, this issue can more effectively be submitted and argued via post-conviction proceedings because Havard's argument on this issue relies for the most part on outside-the-record documentation to which the State is unable to respond.

¶42. Without considering these affidavits, which are not part of the official record, we note that the record does reveal that Havard's trial counsel procured testimony from Harrell that his father deserted him at a young age and did not play a role in rearing him. Harrell also testified as to Havard's tender side, specifically discussing Havard's showing love for other children in Harrell's family. Ruby Havard testified to her relationship with Havard as a boy and discussed his love for children, specifically his two nieces. She also testified that Havard had planned to marry Chloe's mother to care for both of them. On the other hand, both Ruby Havard and Harrell stated in their affidavits that trial counsel did not prepare them for their testimony and that they did not know what to say when asked shortly before trial to testify.

¶43. This Court certainly recognizes the importance of presenting mitigating evidence at capital sentencing proceedings. *State v. Tokman*, 564 So.2d 1339 (Miss. 1990). We recognized in *Tokman* that "counsel has a duty to interview potential witnesses and to make an independent investigation of the facts and circumstances of the case." *Id.* at 1342. The United States Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 525, 123 S.Ct. 2527, 2537,

156 L.Ed.2d 471 (2003) stated that "any reasonably competent attorney" would realize the value in pursuing leads "necessary to making an informed choice among possible defenses." *Id.* In what the Court called a "half-hearted" mitigation case, trial counsel in *Wiggins* presented one expert witness but did not present the defendant's life history or social details. *Id.*

¶44.   Havard uses *Wiggins* to argue that a reasonable probability exists that at least one juror would have found a different balance between the mitigating and aggravating circumstances but for the alleged constitutional error, and that he has therefore established prejudice against him. *Id.*   To make his point, Havard relies on several cases where this Court has vacated criminal sentences based, at least in part, on ineffective assistance of counsel during the sentencing/mitigation phase.   *See Moody v. State*, 644 So.2d 451 (Miss. 1994) (aggravated assault, robbery, and larceny case where counsel did not use facts in mitigation that were readily available, including the age of the two defendants at the time of trial, the lack of prior convictions and history of psychological problems of one defendant, and the fact that the other defendant was married and the father of three children); *Woodward*, 635 So.2d 805 (Miss. 1993) (post-conviction relief case where counsel argued for mitigation through "redeeming love" and failed to present the critical portion of the expert witness's testimony that psychological tests showed the defendant suffered from severe mental disturbance at the time of the crime, in the form of a major depressive disorder with psychotic features, as well as a detailed history brought out during the interviews between the expert and the defendant);

33

***Tokman***, 564 So.2d 1339 (appeal from a post-conviction proceeding where, despite a serious conflict in the evidence of the defendant's psychological and psychiatric condition, the trial judge found that with timely investigation, mitigation evidence could have been obtained and offered during the penalty phase which would have presented the defendant to the jury as a person other than the cold-blooded, callous murderer portrayed by the State); ***Leatherwood v. State***, 473 So.2d 964 (Miss. 1985) (on motion to vacate or set aside judgment and sentence, this Court found the attorney failed to call favorable, willing witnesses, including defendant's military commander and pastor, who could be discovered by questioning the defendant). As can be seen from the circumstances of each case listed, not all the cases are applicable, and none of these cases convince us that Havard's argument requires reversal on this issue. First, ***Moody*** was not a death penalty case. Further, neither ***Woodward***, ***Leatherwood***, nor ***Tokman*** were death penalty cases before us on direct appeal. Those three cases involved post-conviction relief proceedings following our affirmance on direct appeal.

¶45. The State cites cases in response where no ineffective assistance of counsel existed despite not discovering all mitigating evidence. *See **Gray v. State***, 887 So. 2d 158 (Miss. 2004) (counsel not ineffective when he presented a case in mitigation by calling witnesses who testified to defendant's low IQ, nonviolent predisposition, childhood history and emotional trauma); ***Holly v. State***, 716 So. 2d 979 (Miss. 1998) (counsel was deficient for failing to get mental expert for mitigation and only presenting one witness, defendant's mother, but defendant did not show this prejudiced him).

¶46.    In *Stringer v. Jackson*, 862 F.2d 1108, 1116 (5th Cir. 1988), the Fifth Circuit held that "[t]he failure to present a case in mitigation during the sentencing phase of a capital trial is not, per se, ineffective assistance of counsel."   We have in the past recognized the *Stringer* rule. *See Gray*, 887 So. 2d at 167 (Miss. 2004).  *See also Williams v. State*, 722 So. 2d 447, 450 (Miss. 1998) (citing *Williams v. Cain*, 125 F.3d 269, 277 (5th Cir. 1997)).  We have relied on *Stringer* in cases before us on direct appeal.   "The focus of the inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  *Jones v. State*, 857 So. 2d 740, 745 (Miss. 2003) (life imprisonment sentence following murder conviction). "This court has often upheld decisions not to put on mitigating evidence where the decision resulted from a strategic choice."  *Howard v. State*, 853 So. 2d 781, 799 (Miss. 2003) (quoting *Stringer*, 862 F.2d at 1116) (death sentence following capital murder conviction).

¶47.    Havard argues that trial counsel's failure to prepare Ruby Havard and Harrell to testify, and counsel's failure to investigate potential mitigating evidence, created a possibility that trial counsel's actions concerning this issue were unreasonably deficient and not what the Sixth Amendment guarantees.   However, Havard's trial counsel did bring forth and present some evidence to mitigate the sentence through the testimony of two witnesses.   We are therefore unable to conclude from this record that the trial cannot be relied upon as having produced a just result. To meet the *Strickland* standard, Havard must show us this – the lack of a reliable, just result from the trial because of his counsel.   It is also incumbent upon Havard under *Strickland* to demonstrate both that his counsel was deficient and that the deficiency

35

prejudiced the case. A reasonable probability must exist that the outcome of the sentencing would have been different but for counsel's actions. His sentence must have resulted from a breakdown in the adversary process that renders the result unreliable. Given the testimony provided in mitigation and what it did show the jury about Havard's life and tendencies, we simply cannot find such breakdown, or a prejudicial deficiency in trial counsel's performance.

¶48. Havard has now preserved the issue for any PCR proceedings by not failing to waive it here on direct appeal. We decline the invitation to start a dangerous precedent of considering post-trial affidavits in this instance by affiants who have not been subjected to cross-examination.

¶49. Additionally, the new comment under the current M.R.A.P. 22 makes clear that "[o]ther post-conviction issues which cannot be raised at the time of appeal because they involve actions or inaction outside the record are not waived since they cannot practically be raised without further development or investigation." This issue is certainly one to which this Rule would apply. Opposing counsel simply has not had the opportunity to cross-examine or test the new testimony Havard has presented via these affidavits. In this direct appeal, we may consider many issues the old version of Rule 22 broadly allows, but we still look to *Branch* and *Hodges* as authority interpreting Rule 22, even though we decided *Hodges* after the rule's 2005 amendment. Both cases and the current rule and its comment give appropriate guidance. In this direct appeal, this issue is plainly one which cannot be raised and adequately addressed without further development or investigation.

¶50. For all of these reasons, we find this issue to be without merit.

36

## VIII. WHETHER HAVARD WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN CLOSING ARGUMENT AT THE SENTENCING PHASE OF TRIAL

¶51. Havard next asserts he was denied effective assistance of counsel during the closing arguments of the sentencing phase of his trial. Havard asserts that in a brief closing argument, trial counsel conceded the aggravating circumstance of Chloe's tender age and failed to argue mitigating circumstances beyond commenting that mitigating circumstances are what individuals on the jury can find in their souls to lessen the impact of the aggravating circumstances. Trial counsel also alluded to the testimony of Havard's mother and grandmother.

¶52. "What is important at the [sentencing] stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime." *Tuilaepa v. California*, 512 U.S. 967, 972, 114 S.Ct. 2630, 2635, 129 L.Ed.2d 750 (1994). During sentencing, the jury determines whether a defendant eligible for the death penalty should in fact receive that sentence. *Id.* The above requirement is met when the jury is able to consider the relevant mitigating evidence, including the character of the defendant and the circumstances of the crime. *Id.* The question in today's case is whether the performance of Havard's trial counsel was deficient to the extent that it falls short of the Sixth Amendment guarantees. Certainly, at the sentencing phase, trial counsel for a defendant focuses on efforts to save the defendant's life. Guilt is no longer an issue. While trial counsel's closing arguments at the sentencing phase of Havard's trial, when viewed with the benefit of hindsight, could have been

37

presented more forcibly, this Court has been consistent in finding that closing argument falls under the ambit of defense counsel's trial strategy. *Pruitt v. State*, 807 So.2d 1236, 1240 (Miss. 2002). For this reason, we have also been consistently hesitant to vacate a sentence based on closing arguments by defense counsel. Standing alone, this error, if any indeed exists, is harmless as far as its ultimate effect on the outcome of the trial. Defense counsel made a relatively short closing argument which in the end did not sway the minds of the jurors. Havard relies on *Woodward*, 635 So.2d at 810, but this is distinguishable because in that case the trial counsel went so far as to admit the guilt of his client and even told the jury he could not ask the jury to spare the defendant's life based on the facts. We have also often held that "[s]o long as counsel in his address to the jury keeps fairly within the evidence and the issues involved, wide latitude of discussion is allowed." *Brewer v. State*, 704 So.2d 70, 73 (Miss. 1997) (quoting *Clemons v. State*, 320 So.2d 368, 371-72 (Miss. 1975)). Given this wide latitude and any strategic decisions counsel could have made with regard to his approach to the trial of this case, we are unable to find this issue presents us with an instance of reversible error. We thus find this issue to be without merit.

## IX. WHETHER THE TRIAL COURT ERRED IN OVERRULING AN OBJECTION TO A PHOTOGRAPH DEPICTING THE VICTIM DURING HER LIFETIME, THUS CAUSING PREJUDICIAL SYMPATHY

¶53. Havard's next claim of error is that the trial court improperly overruled an objection by defense counsel to the State's introduction into evidence of a photograph of Chloe taken during her lifetime. Specifically, the State introduced at trial a photograph of Chloe dressed

in a Christmas outfit. Havard claims this created undue prejudice against him, especially because the trial took place shortly before Christmas. The State responds that the photograph was intended for use only for identification purposes.

¶54. Havard offers much case law arguing that emotion evidence designed to create sympathy for the victim is improper, and that in deciding guilt, the jury should consider only facts in evidence, and not irrelevant influences and possible prejudices. Also, Havard points out that character evidence is generally inadmissible under Mississippi law. Our inquiry becomes whether the trial judge abused his discretion in allowing this photograph into evidence. "The admission of evidence, including photographs, is left to the sound discretion of the trial judge." *Minor v. State*, 831 So.2d 1116, 1120 (Miss. 2002). Havard argues that such evidence should be subjected to a balancing test pursuant to the provisions of Miss. R. Evid. 403 and our case law. Indeed, the record does not reveal that the trial court performed a Rule 403 balancing test.[7] Even though a trial judge's determination on the issue of admissibility of evidence must ultimately be filtered through Rule 403, a trial judge's failure to place Rule 403's magic words into the record does not necessarily create the presumption that the trial judge failed to consider Rule 403's requirements, nor does it automatically render the trial judge's decision on admissibility to be error, much less reversible error. Allowing this photograph of a live

---

[7]Miss. R. Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Chloe into evidence was not error. Even if we were to find error in the trial judge's allowing this photograph into evidence, which we do not, under the facts of this case, such error, if any, was harmless. *McKee v. State*, 791 So.2d 804, 810 (Miss. 2001). The photograph was not intended to inflame the jury, but rather to identify the victim. This purpose of identity falls under the categories of admissible photographs. The State correctly cites several cases where we have upheld the introduction of photographs for identification purposes. *See Stevens v. State*, 808 So.2d 908 (Miss. 2002); *Edwards v. State*, 737 So.2d 275 (Miss. 1999); *Jordan v. State*, 728 So.2d 1088 (Miss. 1998); *Walker v. State*, 671 So.2d 581 (Miss. 1995); *Bullock v. State*, 808 So.2d 908 (Miss. 1980). However, any picture of six-month-old Chloe, no matter what she was wearing, or the season, would surely have no different effect on the jury than did this particular photograph of Chloe. Any such error committed by the trial judge in failing to perform a Rule 403 balancing test is harmless beyond a reasonable doubt. We have stated that "[a]n error is harmless when it is apparent on the face of the record that a fair-minded jury could have arrived at no verdict other than that of guilty." *McKee*, 791 So.2d at 810 (citing *Floyd v. City of Crystal Springs,* 749 So.2d 110, 120 (Miss. 1999)) (other citations omitted). Certainly, in viewing the photograph, the probative value of this relevant evidence was not substantially outweighed by the danger of unfair prejudice. We thus find this issue to have no merit.

### X. WHETHER THE TRIAL COURT ERRED IN ANSWERING A QUESTION SUBMITTED BY THE JURY IN SUCH A WAY AS TO CAUSE SPECULATION OF EARLY RELEASE FROM A LIFE SENTENCE

¶55.    The next issue is whether the trial judge, in answering a question submitted to him from the jury while the jury was deliberating during the sentencing phase, created undue speculation of some future release from incarceration if the defendant was not sentenced to death.    The question concerned the definition of a life sentence.    Havard argues that the trial judge answered the question in a way that left open the possibility in the jurors' minds that if Havard had not been sentenced to death, he could possibly, at some point in the future, be released from incarceration on parole.    This, Havard contends, made the option of a life sentence less feasible for the jury.    Havard relies on *Williams v. State*, 544 So.2d 782 (Miss. 1987), where the concern was introducing an arbitrary and irrelevant factor into the jurors' minds during their decision on sentencing.

¶56.    In today's case, the following discussion occurred during the sentencing phase of the trial, but outside the presence of the jury:

> BY THE COURT: Let the record show that the Court has all counsel present, the jury having sent a note to the Court through the bailiff.  The Court has allowed the attorneys to read the question which is as follows.  This will be preserved for the record.  Says, "Please define life without parole.  One, will he spend the rest of his life in prison or will he ever be eligible for parole.  Question"—this says number two, I guess.  "Three, can the law be changed to allow him parole in the future? All right.  Any comments for the record? […]

> BY MR. HARPER: Whatever the State feels appropriate.    I don't have any suggestion.

> …

> BY MR. CLARK: Okay.  Whatever you want to do.

> BY THE COURT: It's the Court's understanding that number one, if matters can be answered, they should always be answered truthfully to the jury.  There are

41

clearly some questions that can't be answered. It would be my inclination to give you a chance to object to anything before it goes, but it's my inclination to respond that life without parole means life in prison without any eligibility for parole. It essentially says the same thing, but it does, I think, answer the first two questions more adequately about it that life without parole life in prison without any eligibility for parole. Now, the last question is, of course, the more difficult question. The Court would answer this with a statement that it would be up to the legislature to determine any changes in the law in the future.

BY MR. SERMOS: May I ask the Court one thing. Possibly consider one additional—

BY THE COURT: All right. What is that?

BY MR. SERMOS: Would be to go up to—like you said, it would be up to the legislature, and I don't know if you want to put it, but "then the legislature would also determine if any new law was to be applied retroactively."

BY MR. HARPER: I don't think that would be a correct statement of the law … I would suggest adding which they have the prerogative to do.

BY THE COURT: No, no. This is what the Court is inclined to do. Everybody listen very carefully. The Court intends to respond as follows. Life without parole means life in prison without any eligibility for parole. It would be up to the legislature to make any future changes in the law. You may state your objections.

BY MR. SERMOS: The only thing I would ask, Your Honor, is the Court considers without eligibility for parole or early release of any type. I mean, may be that would be confusing, but I think—what do you think, Robert?

…

BY THE COURT: I could add "or early release."

BY MR. SERMOS: Or early release for any reason.

BY THE COURT: The only problem is it's always subject to a governor's

BY MR. CLARK: But—

BY THE COURT: I don't want to get into that. Just a second. Based on the suggestion of the defense counsel, the Court would be willing to add "or early release." "Any eligibility for parole or early release."

BY MR. SERMOS: Yes, sir.

BY THE COURT: So this will be what the Court will write. "Life without parole means life in prison without eligibility for parole or early release. It would be up to the legislature to make any future changes of the law." Any objection to that?

…

BY MR. SERMOS: I think just what you got is—I like that.

¶57. The State cites a case with similar facts, *Wiley v. State*, 691 So.2d 959 (Miss. 1997). In *Wiley*, the defendant contended the jury was improperly told about the possibility of parole should he be sentenced to life in prison. This Court agreed with the State's argument in *Wiley* that because the trial judge "steadfastly maintained" that the statute defined life in prison as the punishment, there was no error. *Id.* at 964. The trial judge's ultimate answer to the question puts this issue to rest in this case. The judge answered that a life sentence meant life in prison without *any eligibility* of parole or early release. Additionally, the statement by the trial judge that "[i]t would be up to the legislature to make any future changes of the law," was indeed a correct statement in an honest effort by the judge to answer the jury's question, and the statement was one which should hardly come as any surprise to our citizens sitting on a jury. The statement by the trial judge was as general as possible, and there is absolutely no reason to believe the jury made its ultimate decision on the sentence based on this statement to the jury by the trial judge. This issue is without merit.

43

## XI. WHETHER THE TRIAL COURT'S LIMITING INSTRUCTION OF AN AGGRAVATING CIRCUMSTANCE WAS ITSELF UNCONSTITUTIONALLY VAGUE AND OVERBROAD

¶58. The trial court's sentencing instruction S-9 defined for the jury what constituted a heinous, atrocious, or cruel (HAC) capital offense and instructed the jury that it may consider such, if found, an aggravating circumstance. Havard concedes in his brief to this Court that we have held this instruction to be constitutionally sufficient. Nonetheless, Havard challenges this instruction as unconstitutionally vague. The instruction read as follows:

> The Court instructs the jury that in considering whether the capital offense was especially heinous, atrocious or cruel; heinous means extremely wicked or shockingly evil; atrocious means outrageously wicked and vile; and cruel means designed to inflict a high degree of pain with indifference to, or even enjoyment of the suffering of others.

> An especially heinous, atrocious or cruel capital offense is one accompanied by such additional acts as to set the crime apart from the norm of capital murders – the conscienceless or pitiless crime which is unnecessarily torturous to the victim. If you find from the evidence beyond a reasonable doubt that the defendant utilized a method of killing which caused serious mutilation, that there was dismemberment of the body prior to death, that the defendant inflicted physical or mental pain before death, that there was mental torture and aggravation before death, or that a lingering or torturous death was suffered by the victim, then you may find this aggravating circumstance.

This issue is quickly laid to rest. "This Court has repeatedly held that the 'especially heinous, atrocious or cruel' provision of Miss. Code Ann. § 99-19-101(5)(h) is not so vague and overbroad as to violate the United States Constitution." *Stevens v. State*, 806 So.2d 1031, 1060 (Miss. 2001). *See also* *Crawford v. State*, 716 So.2d 1028 (Miss. 1998); *Mhoon v. State*, 464 So.2d 77 (Miss. 1985); *Coleman v. State*, 378 So.2d 640 (Miss. 1979). Indeed Havard himself concedes this Court's recognition of the constitutionality of this instruction.

44

Despite this concession, Havard urges this Court to find that the United States Supreme Court in *Shell v. Mississippi*, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) held this instruction unconstitutional. We briefly revisit what we stated a little more than a year ago with regard to this same challenge:

> Thorson argues that first paragraph of the above instruction was held unconstitutional by the United States Supreme Court in *Shell v. Mississippi*, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990). Thorson further contends that in *Hansen v. State*, 592 So.2d 114 (Miss. 1991), this Court announced that the language held unconstitutional in Shell should not be submitted to juries. Therefore, Thorson concludes that Instruction SP-2 has been determined by the United States Supreme Court and this Court to be per se objectionable. In *Shell*, the Supreme Court found that when used alone, language identical to that used in the first paragraph of instruction SP-2 was not constitutionally sufficient. 498 U.S. at 2, 111 S.Ct. 313. However, in *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), the Supreme Court determined that the first sentence of the second paragraph was a proper limiting instruction when used in conjunction with the language from *Shell*. This Court has repeatedly held this identical instruction to be constitutionally sufficient. *See Knox v. State*, 805 So.2d 527, 533 (Miss. 2002); *Puckett v. State*, 737 So.2d 322, 359-60 (Miss. 1999); *Jackson v. State*, 684 So.2d 1213, 1236-37 (Miss. 1996).

*Thorson v. State*, 895 So.2d 85, 104 (Miss. 2004). Havard invites us to overturn firmly entrenched Mississippi precedent on this issue. We decline to do so. For these reasons, this issue is without merit.

## XII. WHETHER THE INDICTMENT FAILED TO CHARGE THE NECESSARY ELEMENTS TO IMPOSE THE DEATH PENALTY

¶59. Havard next contends the indictment in this case failed to charge all the elements necessary to impose the death penalty under Mississippi law. The State points out that Havard's counsel failed to object to the indictment at trial, and therefore a procedural bar

45

prevents the issue from having merit. This is not so. "[S]ubstantive challenges to the sufficiency of the indictment are not waivable and may be raised for the first time on appeal." *Byrom v. State*, 863 So.2d 836, 865 (Miss. 2003).

¶60. In *Byrom*, we made plain what is required of a proper indictment.

> The standard of reviewing the sufficiency of indictments is well settled:
> The indictment must be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation against him. *Peterson v. State*, 671 So.2d 647, 653-54 (Miss. 1996); URCCC 7.06. The indictment is held to be sufficient if it contains the seven factors enumerated in URCCC 7.06.
> 1. The name of the accused;
> 2. The date on which the indictment was filed in court;
> 3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
> 4. The county and judicial district in which the indictment is brought;
> 5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient;
> 6. The signature of the foreman of the grand jury issuing it; and
> 7. The words "against the peace and dignity of the state."

*Id.* (quoting *Gray v. State*, 728 So.2d 36, 70 (Miss. 1998)). All of these factors are present in this case. Havard's concern with the indictment is that it failed to charge all elements necessary to impose the death penalty, specifically that it lacked an aggravating factor and a *mens rea* element. Havard relies on a United States Supreme Court opinion which states that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, *any fact* (other than prior conviction) *that increases the maximum penalty for a crime must be charged in an indictment*, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S.Ct. 2348, 2355, 147

46

L.Ed.2d 435 (2000) (relying on *Jones v. United States*, 526 U.S. 227, 243, n. 6., 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)) (emphasis added). However, that excerpt from *Apprendi* dealt with the constitutional right to a jury, not the sufficiency of an indictment. In any event, this Court has held that *Apprendi* and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which Havard also relies on for this argument, do not apply to Mississippi's capital murder sentencing scheme. *Berry v. State*, 882 So.2d 157, 172 (Miss. 2004).

¶61. Havard also claims a jury must find at least one aggravating factor and a *mens rea* element in a sentencing hearing pursuant to Miss. Code Ann. Sections 99-19-101(5) and (7) before the death penalty can be given. Otherwise, Havard argues, the statutory maximum penalty is life. First, this conflicts with the definition of capital murder being a crime punishable by death, discussed below. Second, Havard is mistaken about the *mens rea* requirement. Under Miss. Code Ann. Section 99-19-101(7), a jury may only find that the defendant actually killed, and does not need a true *mens rea*. Third, sufficient evidence was presented at trial for a jury to find that under Miss. Code Ann. Section 99-19-101(5), aggravating circumstances existed. *See, e.g., Evans v. State*, 725 So.2d 613 (Miss. 1997) (aggravating circumstance was sexual battery of ten-year-old); *Walker v. State*, 671 So.2d 581 (Miss. 1995) (aggravating circumstance was sexual battery of teenage girl).

¶62. In any case, there is no increase of a maximum penalty in this case. The maximum penalty for killing while engaged in the commission of sexual battery is death. This crime is defined as capital murder under Miss. Code Ann. Section 97-3-19(2)(e). The definition of

47

capital murder applicable to this case is a crime punishable by death.  Miss. Code Ann. § 1-3-4.

This issue is without merit.

### XIII. WHETHER HAVARD WAS DENIED HIS CONSTITUTIONAL RIGHT TO A RELIABLE SENTENCE BECAUSE THE TRIAL COURT ALLOWED THE JURY TO CONSIDER AGGRAVATORS TO SUPPORT THE SENTENCE OF DEATH

¶63.   Havard claims the trial court erred because the jury was instructed concerning two aggravators:  (1) "the capital offense was committed while [defendant] was engaged in the commission of, or an attempt to commit, sexual battery,"  and (2) "the capital offense was especially heinous, atrocious or cruel."   The first aggravator is the underlying felony on which Havard's capital murder conviction was based, and is set out in Miss. Code Ann. Section 99-19-101(5)(d).  The second aggravator was a separate statutory aggravating circumstance.  Miss. Code Ann. § 99-19-101(5)(h).   Havard also claims that because the HAC aggravator wholly subsumed the sexual battery aggravator, the two aggravating circumstances could not be submitted together to the jury.   The State again claims a procedural bar to these issues as Havard did not raise these issues at the trial level.   Additionally, the State claims that Havard fails to cite relevant authority with regard to the assertion that one aggravator subsumes the other.  *See Simmons v. State*, 805 So.2d 452, 487 (Miss. 2001).   When a party fails to cite authority to support an argument on an issue, this Court is not required to review such issue. *Id.*   On both claims, the State is correct.   However, procedural bar notwithstanding, we will address the merits of these issues.

48

¶64. The concept of one aggravating factor subsuming another exists in order to avoid "double counting," or allowing aggravating factors to become unconstitutionally duplicative, thus unfairly affecting the weighing process in states like Mississippi, whose criminal law requires mitigating factors to be weighed against aggravating factors. The Tenth Circuit is an example of one jurisdiction replete with cases dealing with questions of aggravating factors subsuming one another and offers helpful explanations in its opinions. "Under our cases, one aggravating circumstance is improperly duplicative of another only if the first aggravator 'necessarily subsumes' the other." *Patton v. Mullin*, 425 F.3d 788, 809 (10th Cir. 2005). "The fact that two aggravating circumstances rely on some of the same evidence does not render them duplicative." *Id.* The concern is that the aggravators are not duplicative. *Id.* When they are not duplicative, the Tenth Circuit allows use of the same evidence to support different aggravators. *Id.* The test for determining when aggravating factors impermissibly overlap and are duplicative is whether one aggravating factor necessarily subsumes the other, not whether certain evidence is relevant to both aggravators. *Fields v. Gibson*, 277 F.3d 1203, 1218-19 (10th Cir. 2002). Of the two aggravators on which Havard focuses, one does not necessarily subsume the other. The jury could have found from the evidence presented at trial that Havard was engaged in the commission of sexual battery while committing the acts on Chloe which led to her death. Additionally, the jury could have found this crime to meet the HAC standard because of factors other than the sexual battery, such as the relationship between Havard and Chloe's mother or Chloe's age.

49

¶65. Finally, Havard claims that the evidence of the underlying felony used to elevate this crime to capital murder may not also be used as an aggravating circumstance. The State cites several examples of this Court's case law which disprove this assertion, laying it quickly to rest. *See, e.g., **Manning v. State***, 735 So.2d 323 (Miss. 1999); **Smith v. State**, 729 So.2d 1191 (Miss. 1998). *See also **Evans v. State***, 725 So.2d 613 (Miss. 1997) (sexual battery of ten-year old sufficient as both underlying felony and aggravating circumstance); **Walker v. State**, 671 So.2d 581 (Miss. 1995) (sexual battery of teenager sufficient as both underlying felony and aggravating circumstance). This issue is without merit.

## XIV. WHETHER AGGREGATE ERROR IN THIS CASE REQUIRES REVERSAL OF THE CONVICTION AND DEATH SENTENCE

¶66. Havard's next issue before this Court is whether the aggregate error in this case merits reversal. "This Court has held that individual errors, not reversible in themselves, may combine with other errors to make up reversible error." **Byrom v. State**, 863 So.2d 836, 847 (Miss. 2003) (quoting **Hansen v. State**, 592 So.2d 114, 142 (Miss. 1991)).

¶67. Even when finding errors, this Court has found a harmless aggregate result of those errors is possible. "In **Hansen**, likewise a death penalty case, this Court found that the trial court had committed three errors during the guilt phase, but "we nonetheless hold the errors in this case, given their cumulative effect upon the penalty phase, harmless beyond a reasonable doubt." **Byrom**, 863 So.2d at 847 (relying on **Hansen**, 592 So.2d at 153). "It is true that this Court has reversed death penalty sentences where the cumulative effect of prosecutorial misconduct has denied the appellant a fair and impartial trial. However, the allegations of this

petition come nowhere close to the misconduct in *Stringer*, and, in our opinion do not mandate review under § 99-39-21." *Irving v. State*, 498 So.2d 305, 310 (Miss. 1986) (relying on *Stringer v. State*, 500 So.2d 928 (1986)).

¶68.    We thus find this issue to be without merit.

### XV.    WHETHER ANY STATUTORILY REQUIRED ISSUES HAVE MERIT, INCLUDING WHETHER THE SENTENCE WAS DISPROPORTIONATE TO THE PENALTY IN SIMILAR CASES

¶69.    We now address issues not directly raised by Havard, but which we are required by statute to consider.    When a death penalty case comes before this Court on direct appeal, we must review these other issues, even if the appellant has not specifically raised them.    Miss. Code Ann. Section 99-19-105 (Rev. 2000) provides:

> (3) With regard to the sentence, the court shall determine:
>         (a) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor;
>         (b) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in Section 99-19-101;
>         © Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant; and
>         (d) Should one or more of the aggravating circumstances be found invalid on appeal, the Mississippi Supreme Court shall determine whether the remaining aggravating circumstances are outweighed by the mitigating circumstances or whether the inclusion of any invalid circumstance was harmless error, or both.

Miss. Code Ann. § 99-19-105(3).

¶70.    As to the possibility of undue influence of passion or prejudice in the imposition of the death penalty, we have addressed that question, supra, in Issue VI.    Additionally, from the

51

totality of the record, we can state, without reservation, that we find no evidence or inference which would indicate that the sentence of death was imposed by the jury while under the influence of passion, prejudice, or other existing arbitrary factor. Certainly, as discussed in Issue XIII, and as revealed in the record, the totality of the evidence supported the jury's finding of one or more statutory aggravating circumstances, specifically those set out in Miss. Code Ann. Sections 99-19-101(5)(d) and (h). Because we have not found the statutory aggravating circumstances utilized in today's case to be invalid, we need not perform a re-weighing of the "remaining aggravating circumstances" versus the mitigating circumstances, nor must we perform a harmless error analysis on an invalid aggravating circumstance.

¶71. Finally, we determine whether the sentence of death imposed upon Havard is excessive or disproportionate to the penalty imposed in similar cases, when considering both the crime and the defendant. There are numerous cases where a defendant convicted of capital murder received a jury sentence utilizing the aggravating circumstances under Miss. Code Ann. Sections 99-19-101(5)(d) and (h). Many of these juries, though not all, have imposed the death sentence for this offense. *See, e.g.,* ***Kolberg v. State***, 829 So.2d 29, 39 (Miss. 2002) (defendant sentenced to life imprisonment after being convicted of murder of live-in girlfriend's infant daughter); ***Evans v. State***, 725 So.2d 613 (Miss. 1997) (defendant sentenced to death following conviction of capital murder with the underlying felony of sexual battery of ten-year-old); ***Walker v. State***, 671 So.2d 581 (Miss. 1995) (defendant sentenced to death following conviction of capital murder during the commission of sexual battery of teenager). Havard was convicted of killing his girlfriend's six-month old daughter during the commission

52

of sexual battery upon young Chloe. The non-fatal injuries, sexual and non-sexual, which the jury found Havard inflicted upon Chloe were horrific. When considering these cases, along with the nature of the crime, we unhesitatingly find that the sentence in this case is therefore not disproportionate to other cases of this type. (See Appendix A.)

¶72. This issue is without merit.

## CONCLUSION

¶73. For the reasons stated, the Adams County Circuit Court's judgment of conviction for capital murder and imposition of the death penalty is affirmed.

¶74. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH BY LETHAL INJECTION, AFFIRMED.**

**SMITH, C.J., WALLER, P.J., EASLEY, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., AND DIAZ, J., NOT PARTICIPATING.**

# APPENDIX

## DEATH CASES AFFIRMED BY THIS COURT

*Hodges v. State,* — So.2d — (Miss. 2005).

*Walker v. State,* — So. 2d — (Miss. 2005).

*Le v. State,* — So.2d — (Miss. 2005).

*Brown v. State,* 890 So. 2d 901 (Miss. 2004).

*Powers v. State* 883 So.2d 20 (Miss. 2004)

*Branch v. State,* 882 So.2d 36 (Miss. 2004).

*Scott v. State,* 878 So.2d 933 (Miss. 2004).

*Lynch v. State,* 877 So.2d 1254 (Miss. 2004).

*Dycus v. State,* 875 So.2d 140 (Miss. 2004).

*Byrom v. State,* 863 So.2d 836 (Miss. 2003).

*Howell v. State,* 860 So.2d 704 (Miss. 2003).

*Howard v. State,* 853 So.2d 781 (Miss. 2003).

*Walker v. State,* 815 So.2d 1209 (Miss. 2002). *following remand.

*Bishop v. State,* 812 So.2d 934 (Miss. 2002).

*Stevens v. State,* 806 So.2d 1031 (Miss. 2002).

*Grayson v. State,* 806 So.2d 241 (Miss. 2002).

*Knox v. State,* 805 So.2d 527 (Miss. 2002).

*Simmons v. State,* 805 So.2d 452 (Miss. 2002).

*Berry v. State,* 802 So.2d 1033 (Miss. 2001).

*Snow v. State*, 800 So.2d 472 (Miss. 2001).

*Mitchell v. State,* 792 So.2d 192 (Miss. 2001).

*Puckett v. State,* 788 So.2d 752 (Miss. 2001). * following remand.

*Goodin v. State,* 787 So.2d 639 (Miss. 2001).

*Jordan v. State,* 786 So.2d 987 (Miss. 2001).

## DEATH CASES AFFIRMED BY THIS COURT

### (continued)

*Manning v. State,* 765 So.2d 516 (Miss. 2000). *following remand.

*Eskridge v. State,* 765 So.2d 508 (Miss. 2000).

*McGilberry v. State,* 741 So. 2d 894 (Miss. 1999).

*Puckett v. State,* 737 So. 2d 322 (Miss. 1999).      *remanded for *Batson* hearing.

*Manning v. State,* 735 So. 2d 323 (Miss. 1999). *remanded for *Batson* hearing.

*Hughes v. State,* 735 So. 2d 238 (Miss. 1999).

*Turner v. State,* 732 So. 2d 937 (Miss. 1999).

*Smith v. State,* 729 So. 2d 1191 (Miss. 1998).

*Burns v. State,* 729 So. 2d 203 (Miss. 1998).

*Jordan v. State,* 728 So. 2d 1088 (Miss. 1998).

*Gray v. State,* 728 So. 2d 36 (Miss. 1998).

*Manning v. State,* 726 So. 2d 1152 (Miss. 1998).

*Woodward v. State,* 726 So. 2d 524 (Miss. 1997).

*Bell v. State,* 725 So. 2d 836 (Miss. 1998).

*Evans v. State,* 725 So. 2d 613 (Miss. 1997).

*Brewer v. State,* 725 So. 2d 106 (Miss. 1998).

*Crawford v. State,* 716 So. 2d 1028 (Miss. 1998).

*Doss v. State,* 709 So. 2d 369 (Miss. 1996).

*Underwood v. State,* 708 So. 2d 18 (Miss. 1998).

*Holland v. State,* 705 So. 2d 307 (Miss. 1997).

*Wells v. State,* 698 So. 2d 497 (Miss. 1997).

*Wilcher v. State,* 697 So. 2d 1087 (Miss. 1997).

*Wiley v. State,* 691 So. 2d 959 (Miss. 1997).

*Brown v. State*, 690 So. 2d 276 (Miss. 1996).

## DEATH CASES AFFIRMED BY THIS COURT

### (continued)

*Simon v. State*, 688 So. 2d 791 (Miss.1997).

*Jackson v. State*, 684 So. 2d 1213 (Miss. 1996).

*Williams v. State,* 684 So. 2d 1179 (Miss. 1996).

*Davis v. State,* 684 So. 2d 643 (Miss. 1996).

*Taylor v. State*, 682 So. 2d. 359 (Miss. 1996).

*Brown v. State*, 682 So. 2d 340 (Miss. 1996).

*Blue v. State*, 674 So. 2d 1184 (Miss. 1996).

*Holly v. State*, 671 So. 2d 32 (Miss. 1996).

*Walker v. State*, 671 So. 2d 581(Miss. 1995).

*Russell v. State*, 670 So. 2d 816 (Miss. 1995).

*Ballenger v. State*, 667 So. 2d 1242 (Miss. 1995).

*Davis v. State*, 660 So. 2d 1228 (Miss. 1995).

*Carr v. State*, 655 So. 2d 824 (Miss. 1995).

*Mack v. State*, 650 So. 2d 1289 (Miss. 1994).

*Chase v. State*, 645 So. 2d 829 (Miss. 1994).

*Foster v. State*, 639 So. 2d 1263 (Miss. 1994).

*Conner v. State*, 632 So. 2d 1239 (Miss. 1993).

*Hansen v. State*, 592 So. 2d 114 (Miss. 1991).

**\*Shell v. State**, 554 So. 2d 887 (Miss. 1989), **Shell v. Mississippi,** 498 U.S. 1 (1990) reversing, in part, and remanding, **Shell v. State**, 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

*Davis v. State*, 551 So. 2d  165 (Miss. 1989).

*Minnick v. State*, 551 So. 2d 77 (Miss. 1989).

## DEATH CASES AFFIRMED BY THIS COURT
### (continued)

*\*Pinkney v. State*, 538 So. 2d 329 (Miss. 1989), *Pinkney v. Mississippi*, 494 U.S. 1075 (1990) vacating and remanding *Pinkney v. State*, 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

*\*Clemons v. State*, 535 So. 2d 1354 (Miss. 1988), *Clemons v. Mississippi*, 494 U.S. 738 (1990) vacating and remanding, *Clemons v. State*, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

*Woodward v. State*, 533 So. 2d 418 (Miss. 1988).

*Nixon v. State*, 533 So. 2d 1078 (Miss. 1987).

*Cole v. State*, 525 So. 2d 365 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1346 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1317 (Miss. 1987).

*Faraga v. State*, 514 So. 2d 295 (Miss. 1987).
*\*Jones v. State*, 517 So. 2d 1295 (Miss. 1987)*, Jones v. Mississippi*, 487 U.S. 1230 (1988) vacating and remanding, *Jones v. State*, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Wiley v. State*, 484 So. 2d 339 (Miss. 1986).

*Johnson v. State*, 477 So. 2d 196 (Miss. 1985).

*Gray v. State*, 472 So. 2d 409 (Miss. 1985).

*Cabello v. State*, 471 So. 2d 332 (Miss. 1985).

*Jordan v. State*, 464 So. 2d 475 (Miss. 1985).

*Wilcher v. State*, 455 So. 2d 727 (Miss. 1984).

*Billiot v. State*, 454 So. 2d 445 (Miss. 1984).

*Stringer v. State*, 454 So. 2d 468 (Miss. 1984).

*Dufour v. State*, 453 So. 2d 337 (Miss. 1984).


## DEATH CASES AFFIRMED BY THIS COURT

### (continued)

*Neal v. State*, 451 So. 2d 743 (Miss. 1984).

*Booker v. State*, 449 So. 2d 209 (Miss. 1984).

*Wilcher v. State*, 448 So. 2d 927 (Miss. 1984).

*Caldwell v. State*, 443 So. 2d 806 (Miss. 1983).

*Irving v. State*, 441 So. 2d 846 (Miss. 1983).

*Tokman v. State*, 435 So. 2d 664 (Miss. 1983).

*Leatherwood v. State*, 435 So. 2d 645 (Miss. 1983).

*Hill v. State*, 432 So. 2d 427 (Miss. 1983).

*Pruett v. State*, 431 So. 2d 1101 (Miss. 1983).

*Gilliard v. State*, 428 So. 2d 576 (Miss. 1983).

*Evans v. State*, 422 So. 2d 737 (Miss. 1982).

*King v. State*, 421 So. 2d 1009 (Miss. 1982).

*Wheat v. State*, 420 So. 2d 229 (Miss. 1982).

*Smith v. State*, 419 So. 2d 563 (Miss. 1982).

*Johnson v. State*, 416 So. 2d 383 (Miss.1982).

*Edwards v. State*, 413 So. 2d 1007 (Miss. 1982).

*Bullock v. State*, 391 So. 2d 601 (Miss. 1980).

*Reddix v. State*, 381 So. 2d 999 (Miss. 1980).

*Jones v. State*, 381 So. 2d 983 (Miss. 1980).

*Culberson v. State*, 379 So. 2d 499 (Miss. 1979).

*Gray v. State*, 375 So. 2d 994 (Miss. 1979).

*Jordan v. State*, 365 So. 2d 1198 (Miss. 1978).

*Voyles v. State*, 362 So. 2d 1236 (Miss. 1978).

*Irving v. State*, 361 So. 2d 1360 (Miss. 1978).

*Washington v. State*, 361 So. 2d 6l (Miss. 1978).


## DEATH CASES AFFIRMED BY THIS COURT

### (continued)

*Bell v. State*, 360 So. 2d 1206 (Miss. 1978).

\* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

## DEATH CASES REVERSED AS TO GUILT PHASE
## <u>AND SENTENCE PHASE</u>

*Flowers v. State,* 842 So.2d 531 (Miss. 2003).

*Randall v. State,* 806 So. 2d 185 (Miss. 2002).

*Flowers v. State,* 773 So.2d 309 (Miss. 2000).

*Edwards v. State,* 737 So. 2d 275 (Miss. 1999).

*Smith v. State,* 733 So. 2d 793 (Miss. 1999).

*Porter v. State,* 732 So.2d 899 (Miss. 1999).

*Kolberg v. State,* 704 So. 2d 1307 (Miss. 1997).

*Snelson v. State,* 704 So. 2d 452 (Miss. 1997).

*Fusilier v. State,* 702 So. 2d 388 (Miss. 1997).

*Howard v. State,* 701 So. 2d 274 (Miss. 1997).

*Lester v. State,* 692 So. 2d 755 (Miss. 1997).

*Hunter v. State*, 684 So. 2d 625 (Miss. 1996).

*Lanier v. State*, 684 So. 2d 93 (Miss. 1996).

*Giles v. State,* 650 So. 2d 846 (Miss. 1995).

*Duplantis v. State*, 644 So. 2d 1235 (Miss. 1994).

*Harrison v. State*, 635 So. 2d 894 (Miss. 1994).

*Butler v. State*, 608 So. 2d 314 (Miss. 1992).

*Jenkins v. State*, 607 So. 2d 1171 (Miss. 1992).

*Abram v. State*, 606 So. 2d 1015 (Miss. 1992).

*Balfour v. State*, 598 So. 2d 731 (Miss. 1992).

*Griffin v. State*, 557 So. 2d 542 (Miss. 1990).

*Bevill v. State*, 556 So. 2d 699 (Miss. 1990).

*West v. State*, 553 So. 2d 8 (Miss. 1989).

*Leatherwood v. State*, 548 So. 2d 389 (Miss. 1989).

*Mease v. State*, 539 So. 2d 1324 (Miss. 1989).

**DEATH CASES REVERSED AS TO GUILT PHASE
AND <u>SENTENCE PHASE</u>**
**(continued)**

*Houston v. State*,  531 So. 2d 598 (Miss. 1988).

*West v. State*, 519 So. 2d 418 (Miss. 1988).

*Davis v. State*, 512 So. 2d 129l (Miss. 1987).

*Williamson v. State*, 512 So. 2d 868 (Miss. 1987).

*Foster v. State*, 508 So. 2d 1111 (Miss. 1987).

*Smith v. State*, 499 So. 2d 750 (Miss. 1986).

*West v. State*, 485 So. 2d 681 (Miss. 1985).

*Fisher v. State*, 481 So. 2d 203 (Miss. 1985).

*Johnson v. State*, 476 So. 2d 1195 (Miss. 1985).

*Fuselier v. State*, 468 So. 2d 45 (Miss. 1985).

*West v. State*, 463 So. 2d 1048 (Miss. 1985).

*Jones v. State*, 461 So. 2d 686 (Miss. 1984).

*Moffett v. State*, 456 So. 2d 714 (Miss. 1984).

*Lanier v. State*, 450 So. 2d 69 (Miss. 1984).

*Laney v. State*, 421 So. 2d 1216 (Miss. 1982).

**DEATH CASES REVERSED
AS TO PUNISHMENT AND REMANDED
FOR RESENTENCING TO LIFE IMPRISONMENT**

*Reddix v. State*, 547 So. 2d 792 (Miss. 1989).

*Wheeler v. State*, 536 So. 2d 1341 (Miss. 1988).

*White v. State*, 532 So. 2d 1207 (Miss. 1988).

*Bullock v. State*, 525 So. 2d 764 (Miss. 1987).

*Edwards v. State*, 441 So. 2d 84 (Miss. l983).

*Dycus v. State*, 440 So. 2d 246 (Miss. 1983).

*Coleman v. State*, 378 So. 2d 640 (Miss. 1979).

# DEATH CASES REVERSED AS TO
## PUNISHMENT AND REMANDED FOR A NEW TRIAL
### ON SENTENCING PHASE ONLY

*King v. State,* 784 So.2d 884 (Miss. 2001).

*Walker v. State,* 740 So.2d 873 (Miss. 1999).

*Watts v. State,* 733 So.2d 214 (Miss. 1999).

*West v. State,* 725 So. 2d 872 (Miss. 1998).

*Smith v. State*, 724 So. 2d 280 (Miss. 1998).

*Berry v. State,* 703 So. 2d 269 (Miss. 1997).

*Booker v. State*, 699 So. 2d 132 (Miss. 1997).

*Taylor v. State*, 672 So. 2d 1246 (Miss. 1996).

   ***Shell v. State***, 554 So. 2d 887 (Miss. 1989), ***Shell v. Mississippi***, 498 U.S. 1 (1990) reversing, in part, and remanding, ***Shell v. State*** 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

   ***Pinkney v. State***, 538 So. 2d 329 (Miss. 1989), ***Pinkney v. Mississippi,*** 494 U.S. 1075 (1990) vacating and remanding, ***Pinkney v. State,*** 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

   ***Clemons v. State***, 535 So. 2d 1354 (Miss. 1988), ***Clemons v. Mississippi***, 494 U.S. 738 (1990) vacating and remanding, ***Clemons v. State***, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

   ***Jones v. State***, 517 So. 2d 1295 (Miss. 1987), ***Jones v. Mississippi,*** 487 U.S. 1230 (1988) vacating and remanding, ***Jones v. State***, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Russell v. State*, 607 So. 2d 1107 (Miss. 1992).

*Holland v. State*, 587 So. 2d 848 (Miss. 1991).

*Willie v. State*, 585 So. 2d 660 (Miss. 1991).

*Ladner v. State*, 584 So. 2d 743 (Miss. 1991).

*Mackbee v. State*, 575 So. 2d 16 (Miss. 1990).

**DEATH CASES REVERSED AS TO
PUNISHMENT AND REMANDED FOR A NEW TRIAL
ON SENTENCING PHASE ONLY**
**(continued)**

*Berry v. State*, 575 So. 2d 1 (Miss. 1990).

*Turner v. State*, 573 So. 2d 657 (Miss. 1990).

*State v. Tokman*, 564 So. 2d 1339 (Miss. 1990).

*Johnson v. State*, 547 So. 2d 59 (Miss. 1989).

*Williams v. State*, 544 So. 2d 782 (Miss. 1989); *sentence aff'd* 684 So. 2d 1179 (1996).

*Lanier v. State*, 533 So. 2d 473 (Miss. 1988).

*Stringer v. State*, 500 So. 2d 928 (Miss. 1986).

*Pinkton v. State*, 481 So. 2d 306 (Miss. 1985).

*Mhoon v. State*, 464 So. 2d 77 (Miss. 1985).

*Cannaday v. State*, 455 So. 2d 713 (Miss. 1984).

*Wiley v. State*, 449 So. 2d 756 (Miss. 1984); resentencing affirmed, *Wiley v. State*, 484 So. 2d 339 (Miss. 1986), *cert. denied Wiley v. Mississippi*, 479 U.S. 1036 (1988); resentencing ordered, *Wiley v. State,* 635 So. 2d 802 (Miss. 1993) following writ of habeas corpus issued pursuant to *Wiley v. Puckett*, 969 So. 2d 86, 105-106 (5th Cir. 1992); resentencing affirmed, *Wiley v. State*, 95-DP-00149, February 13, 1997 (rehearing pending).

*Williams v. State*, 445 So. 2d 798 (Miss. 1984).  *   Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.